# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>BENJAEL PASCUA CARINO, JR., and ETHEL AGANON PAGDILAO CARINO,<br><br>      Debtors. | Case No. 08-02018<br>Chapter 7 |
| REUBEN PARK and MARION PARK,<br><br>      Plaintiffs,<br><br>vs.<br><br>BENJAEL PASCUA CARINO, JR., and ETHEL AGANON PAGDILAO CARINO,<br><br>      Defendants. | Adv. Pro. No. 09-90017<br><br><br><br>Re: Docket No. 1 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

The trial of this adversary proceeding was held on March 9 and 10, 2009. Donald Spafford and John Choi represented the plaintiffs and Elizabeth Kane represented the defendants. Based on the evidence, I make the following

---

[1]The court has not selected this decision for publication.

# FINDINGS OF FACT

1.  Plaintiffs Reuben and Marion Park own a home in Mililani which they wished to expand. The Parks have no background or experience in construction or related fields and initially decided to hire a contractor to do the work.

2.  In the summer of 2007, a mutual friend introduced the Parks to defendant Benjael Carino, who was then a licensed building contractor and the owner and sole member of Carino Builders, LLC ("Carino Builders").

3.  Defendant Ethel Carino is married to Benjael Carino. She performed administrative tasks for Carino Builders, such as typing, making phone calls for Mr. Carino, writing checks, and handling bank deposits. She did all of her work for Carino Builders at the direction of her husband and had no authority to negotiate contracts or make business decisions for Carino Builders.

4.  On September 10, 2007, Mr. Park (but not Mrs. Park) and Carino Builders signed a contract under which Carino Builders agreed to prepare plans and obtain the requisite permits for the Parks' project.

5.  Mr. Carino, on behalf of Carino Builders, prepared draft plans and a bid for the project. The Parks and Mr. Carino met several times to discuss the project and Carino Builders' bid.

6.  On December 18, 2007, Mr. Carino met with Mr. and Mrs. Park at

U.S. Bankruptcy Court - Hawaii   #09-90017   Dkt # 34   Filed  03/17/10   Page 2 of 13

their residence. During the meeting, Carino Builders and Mr. Park (but not Mrs. Park) signed a contract pursuant to which Carino Builders agreed to undertake the Parks' expansion project. The contract price was $229,394.50. When Mr. Park signed the contract, he gave Mr. Carino a check for $25,000 representing the first payment due under the contract.

7. During the meeting, Mrs. Park refused to sign the contract and urged her husband not to sign the contract either. She wanted more time to review the contract and plans. Mr. Park signed the contract and gave the check to Mr. Rubino despite Mrs. Park's misgivings. Mr. Carino knew of Mrs. Park's reservations because she voiced them in Mr. Carino's presence.

8. There is a dispute concerning whether Mr. Carino agreed that Mr. and Mrs. Park could cancel the contract after Mr. Park signed it. Mr. and Mrs. Park testified that Mr. Carino orally agreed that the Parks could cancel the contract during the next four weeks. Mr. Carino testified that he told the Parks that they could review the contract and plans overnight.

9. The next day, Mrs. Carino (at Mr. Carino's direction) telephoned Mr. Park and asked if it was alright for Carino Builders to deposit the check. Mr. Park said that it was, so Carino Builders deposited the check.

10. The Parks believed that Carino Builders would use their first payment

U.S. Bankruptcy Court - Hawaii   #09-90017   Dkt # 34   Filed  03/17/10   Page 3 of 13

exclusively to pay the costs of their project, not preexisting debts of the Carinos or Carino Builders. The Carinos did not know, and had no reason to know, that the Parks held this belief. The Carinos made no statements to the Parks about how they intended to use the money, and the contract does not restrict the use of the money. The Carinos intended to use, and did in fact use, the Parks' first payment to bring their business accounts current and make payments on the mortgage on their residence.

11. Carino Builders and the Carinos did not explain to the Parks the lien rights of all parties performing under the contract or the Parks' option to demand bonding on the project, how the bond would protect the Parks, or the approximate expense of a bond. The written contract between Carino Builders and the Parks did not contain this information.

12. Mr. and Mrs. Carino did not know that a contractor is required to provide to a homeowner the information described in the preceding paragraph. As a licensed contractor, Mr. Carino should have known of this requirement, but he did not.

13. On December 29, 2007, Mr. Park telephoned Mr. Carino and told him that he wanted to terminate the contract. Mr. Park confirmed this in an email on December 31, 2007. A few days later, the Parks demanded the return of the first

4

U.S. Bankruptcy Court - Hawaii   #09-90017   Dkt # 34   Filed 03/17/10   Page 4 of 13

payment. Carino Builders and the Carinos refused to do so, partly because they did not believe that the Parks had the right to terminate the contract and demand that the first payment be returned and also because they had already spent the money. The parties exchanged emails and met to discuss the situation but were unable to resolve their differences.

14. On May 19, 2008, the Parks sued Carino Builders and the Carinos in state court. The Carinos commenced this chapter 13 case before judgment was entered against them. The state court entered judgment against Carino Builders on March 4, 2010.

Based on these findings of fact, I draw the following

## CONCLUSIONS OF LAW

1. This court has jurisdiction over this adversary proceeding, which is a core proceeding in bankruptcy. 28 U.S.C. § 157 (b)(2)(I). Venue is proper.

2. The Parks claim that the state court judgment against Carino Builders has preclusive effect on the issues of whether Carino Builders violated Haw. Rev. Stat. Chapter 480, whether the contract is void, and the amount of the Parks' claim. Preclusion applies to these issues but not to any other issue in this adversary proceeding.

3. The Parks' complaint asserts that the debt owed by the Carinos to the

U.S. Bankruptcy Court - Hawaii   #09-90017   Dkt # 34   Filed 03/17/10   Page 5 of 13

Parks is not dischargeable in bankruptcy based on section 523(a)(2)(A) and 523(a)(4).

4. The exceptions to discharge in section 523 are "strictly construed against the objecting creditor and liberally in favor of the debtor." In re Hudson, 859 F.2d 1418, 1425 (9th Cir. 1988). The creditor seeking to have the debt excepted from discharge has the burden of proving each element by a preponderance of the evidence. In re Eashai, 87 F.3d 1082, 1086-87 (9th Cir. 1996); In re Littleton, 942 F.2d 551, 554 (9th Cir. 1991).

## Fraud

5. In order to prevail under section 523(a)(2)(A), the creditor must prove that the creditor's debt is "for . . . money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud." When Congress used the term "actual fraud," Congress was referring to the general common law of torts. Field v. Mans, 516 U.S. 59, 71 n. 9 (1995). To establish "false pretenses, a false representation, or actual fraud," the creditor must establish "(1) misrepresentation, fraudulent omission or deceptive conduct by a debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the

6

creditor proximately caused by its reliance on the debtor's statement or conduct." Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000).

6.  The Parks contend that Mr. Carino made one affirmative misrepresentation[2] and two misrepresentations by omission.

7.  *Cancellation Rights*.  The Parks testified that Mr. Carino falsely represented to the Parks that the Parks had four weeks after signing to cancel the contract.  Mr. Park testified that he made no such statement.  The Parks have failed to carry their burden of proving that Mr. Carino made such a representation.  If Mr. Carino made such a representation, the Parks would have mentioned it in the numerous emails which the Parks sent to the Carinos in connection with the cancellation of the contract, but the emails contain no such mention.

8.  *Lien Rights and Bonding Options*.  The Parks argue that Mr. Carino's failure to disclose lien and bonding options under H.R.S. § 444-25.5 was a

---

[2]Although not mentioned in the Parks' closing argument, the Parks testified that Mr. Carino gave them an initial estimate that the job would cost $145,000, much less than the final contract price of $229,394.50.  The Parks' testimony made clear that they feel aggrieved by this discrepancy.  Mr. Carino acknowledged that he initially told the Parks that the job would cost about $130,000 to $150,000.  The Parks did not prove, however, that Mr. Carino knew that this statement was false or deceptive when he made it, that he intended to deceive the Parks, or that the Parks were justified in relying on this "back of the envelope" estimate.  The cost estimate was given during contract negotiations.  The estimate changed and Mr. Park knowingly agreed to that change when he signed the contract.

7

misrepresentation by omission.

9. An omission may satisfy the misrepresentation element of actual fraud under section 523(a)(2)(A) only if the debtor owed a legal duty to disclose the omitted fact. In re Eashai, 87 F.3d at 1089. The common law of torts imposes a duty to disclose in the following circumstances:

> (1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.
>
> (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated[:]
>
>> (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and
>>
>> (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and
>>
>> (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and
>>
>> (d) the falsity of a representation not made with the expectation that it would be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and

8

U.S. Bankruptcy Court - Hawaii   #09-90017   Dkt # 34   Filed 03/17/10   Page 8 of 13

> (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts.

Restatement (Second) of Torts § 551 (1977).

10. None of these circumstances existed in this case. Therefore, Mr. Carino did not owe a common law duty of disclosure. But Mr. Carino, as a licensed contractor, owed a statutory duty to disclose certain information about bonding options and lien rights to the Parks under Haw. Rev. Stat. § 444-25.5. Therefore, Mr. Carino's failure to make this disclosure was a misrepresentation for purposes of section 523(a)(2).

11. The Parks failed, however, to carry their burden of proving that Mr. Carino knew of his statutory obligation and that he intended to deceive them when he failed to provide the statutory disclosures. Mr. Carino did not know that he was required to disclose this information. If he had known of the requirement, he would have satisfied it.

12. The Parks point out that a violation of H.R.S. § 444-25.5 is an unfair and deceptive trade practice under state law. In order to prevail, however, the Parks must also establish that an unfair and deceptive trade practice under the Hawaii Revised Statutes qualifies as "false pretenses, a false representation, or

U.S. Bankruptcy Court - Hawaii  #09-90017  Dkt # 34  Filed  03/17/10  Page 9 of 13

actual fraud" within the meaning of 11 U.S.C. § 523(a)(2)(A). The language of section 523(a)(2)(A) does not support this argument. Congress intended to except from the discharge claims based on common law fraud. Congress did not, however, intend to except from the discharge claims for violations of state statutes, even those that are intended to protect consumers. "Section 523(a)(2)(A) was intended to codify case law as expressed in Neal v. Clark, [95 U.S. 704 (1878)] which interpreted 'fraud' to mean actual or positive fraud rather than fraud implied by law." 4 Collier on Bankruptcy ¶ 523.08[1][e] (15th ed. rev. 2009).

13. *Use of Initial Payment*. The Parks argue that Mr. Carino's failure to disclose how the deposit money would be spent was a misrepresentation. Under the common law standard, Mr. Carino had no duty to disclose to the Parks how the deposit money would be used. He did not know, and had no reason to know, that the Parks believed that he would use the initial payment only for expenses related to the Parks' job.

14. The Parks also failed to carry the burden of proving that Mr. Carino intended to deceive them when he failed to tell the Parks how he intended to use the money.

## Embezzlement or Larceny

15. In order to prevail under 11 U.S.C. § 523 (a)(4), the creditor must

U.S. Bankruptcy Court - Hawaii   #09-90017   Dkt # 34   Filed   03/17/10   Page 10 of 13

prove that the creditor's debt is "for . . . embezzlement or larceny."

16.     Federal law controls the definition of embezzlement for purposes of section 523(a)(4).  <u>First Del. Life Ins. Co. V. Wada (In re Wada)</u>, 210 B.R. 572, 576 (9th Cir. B.A.P. 1997).  Embezzlement requires three elements:  (1) property rightfully in the possession of a nonowner; (2) nonowner's appropriation of the property to a use other than to which it was entrusted; and (3) circumstances indicating fraud. <u>In re Littleton</u>, 942 F.2d at 555.  "The elements of larceny differ only in that a larcenous debtor has come into possession of funds wrongfully." <u>Tanana Valley Med. Clinic LLC v. Drapeau (In re Drapeau)</u>, 2008 Bankr. LEXIS 1219, 10-11 (Bankr. W.D. Wash. April 17, 2008).

17.     The Parks contend that Mr. Carino committed embezzlement or larceny when he used the initial payment for purposes other than the Parks' job.  There is no evidence that Mr. Carino knew or should have known that the Parks thought they were entrusting the money to the Carinos or Carino Builders for the limited purpose of paying costs associated with their job.  Further, for the reasons set forth above, the Parks have failed to prove that the circumstances indicate fraud.[3]  In particular, the parties never discussed how or for what purposes the

---

[3] It is unclear whether the Carinos came into possession of the money rightfully or wrongfully.  The Parks voluntarily paid the money to the Carinos for legitimate purposes under a contract which both parties believed was valid.  Because Mr. Carino failed to make the requisite disclosures about bonding options and lien rights, however, the contract is void as a matter of

11

money was to be used; the contract does not limit the use of the deposit money; Mr. Park gave express permission to deposit the check; and the Parks produced no evidence that Carino Builders did not intend, or was not able, to complete the job as agreed.

18. In summary, the Parks have not carried their burden of proof under section 523(a)(4).

## Mrs. Carino

19. The Parks failed to carry their burden of establishing that their claims against Mrs. Carino are nondischargeable on any theory.

20. The Parks offered no legal theory on which the acts or omissions of Mr. Carino or Carino Builders should be imputed to Mrs. Carino.

21. There is no evidence that Mrs. Carino is independently guilty of false pretenses, a false representation, actual fraud, embezzlement, or larceny. There is no evidence that Mrs. Carino made (knowingly or otherwise) any affirmative misrepresentations, that she owed any duty of disclosure to the Parks, that she intended to deceive the Parks, or that she personally appropriated any of the Parks'

---

state law. Haw. Rev. Stat. §§ 444-25.5(d), 480-12. Neither party has offered authority for or against the proposition that the receipt or use of payments under a contract which the parties thought was valid, but which is void under a state consumer protection statute, is rightful or wrongful for purposes of embezzlement or larceny. Because the Parks have failed to establish the other elements of embezzlement and larceny, I need not decide this issue.

U.S. Bankruptcy Court - Hawaii  #09-90017  Dkt # 34  Filed  03/17/10  Page 12 of 13

property.

* * *

The court will enter a separate and final judgment in favor of the debtors.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: 03/17/2010

13